[Crim. No. 2203. First Dist., Div. Two. Dec. 17, 1941.]

THE PEOPLE, Respondent, v. PAT HAUGHEY et al., Appellants.

James B. O'Connor, Wilbur S. Pierce and Frank J. Needles for Appellants.

Earl Warren, Attorney General, David K. Lener, Deputy Attorney General, Ralph E. Hoyt, District Attorney, J. F. Coakley, Chief Assistant District Attorney, and Nathan Harry Miller, Assistant District Attorney, for Respondent.

NOURSE, P. J.—Defendants were jointly charged in an information containing five counts with violating subdivisions 2, 3, 4, 5, and 6 of section 337a of the Penal Code. Upon a trial by jury defendants Haughey and Whelan were found guilty of violating subdivisions 2, 3, 4, and 5 of the code section and not guilty of a violation of subdivision 6; defendant Wittmayer was found guilty of violating subdivisions 2, 3 and 4 of the code section and not guilty of a violation of subdivisions 5 and 6. The trial court denied defendants' motions for new trial as well as their applications for probation and entered judgments upon the verdicts against each of the defendants. The three defendants appeal from the judgments and from the orders denying their motions for new trial.

No evidence was introduced by defendants in the trial court and the case was sent to the jury on the evidence introduced by the prosecution based upon the theory of a conspiracy to violate section 337a of the Penal Code. The facts were undisputed.

On October 21, 1940, George Realty Company leased the premises at 422–13th Street, Oakland, to defendant Whelan, doing business as "California Race Players Association," for a period of five months at a total rental price of $1025. A clause in the lease limited the occupancy of the place to use as "a brokerage room for the placing of bets on horse races." Defendant Whelan secured a broker's license from the city of Oakland to conduct business on the premises and also contracted with the Oakland Towel Company for towel service. On October 25, 1940, an Oakland police officer warned the defendants that he would arrest them if they opened such an establishment.

On November 25, 1940, when the place was opened to the public, a sign on the door read "Member California Race Players Association" and a poster on the door stated "Will open Monday 7 P. M. for Tuesday's Races." There also appeared a newspaper clipping announcing the opening of the offices for betting and containing the statement that the method of wagering was strictly within the law. A police officer dressed in civilian clothes entered the establishment on the opening day and told the defendant Wittmayer that he desired to place a $2 bet on a certain horse which had been entered in a race for the following day at Bay Meadows Race Track. He was given a racing chart or "scratch sheet" and he signed a card as "principal" which authorized defendant Wittmayer to act as his "agent" in procuring for him a mutuel ticket within the enclosure of the race track. The card further provided that the agent was "to return the mutuel ticket (s) in the event the horse fails to win, place or show, as specified, or to collect and return to me the winnings (if any) from such race." The officer paid defendant Wittmayer the sum of $2 plus a commission of 20¢ and was given a receipt signed by Wittmayer as "agent" wherein the latter agreed "to perform the services as authorized." On subsequent days two other policemen placed bets with defendant Wittmayer in the same manner.

Appellants contend that the court committed prejudicial error in failing to give their requested instructions to the effect that they must be found not guilty of violating section 337a of the Penal Code if they acted as agents and personally placed the bets for their principals through the lawful pari-mutuel machines at the race track. These instructions were based upon the 1935 amendment to section 3 of the "Horse Racing Act" of 1933 and the cases construing the amendment. It is contended that under those authorities appellants' activities were legal and that the trial court could not construct a criminal act by inference.

Section 337a of the Penal Code sets forth the general prohibitions against pool-selling or book-making, keeping a place for recording bets, holding or forwarding stakes, registering bets, permitting a place to be used for such illegal purposes and making or accepting bets. In 1933 the legislature adopted a statute commonly referred to as the "Horse Racing Act" (Stats. 1933, chap. 769) which took effect upon the adoption by the people of section 25a, article IV, of the Constitution on June 27, 1933. This act permitted pari-mutuel wagering on horse races conducted on duly licensed tracks where the wagers were made and placed within the enclosures containing such tracks. It may be noted in passing that in 1941 the act and all of its amendments were repealed, consolidated and revised, and now appear in chapter 4, sections 19400 to 19663 inclusive of division 8 of the Business and Professions Code. In 1935, section 3 of the "Horse Racing Act" was amended (Stats. 1935, Chap. 719, page 1943) by the addition of the following provision:

"A wager made inside an enclosure under the pari-mutuel system for a principal who is not within the enclosure shall be considered a wager made within the enclosure for the purpose of this act and any activity of the principal in connection with such wager shall not be considered a wager made outside the enclosure." (See section 19595 of the Business and Professions Code.)

The act of 1933 as amended in 1935 did not repeal section 337a of the Penal Code prohibiting general betting and registering of bets on horse races, but did no more than to create an exception under certain limited circumstances. (*In re McKelvey*, 19 Cal. App. (2d) 94, 96 [64 Pac. (2d) 1002]; *People* v. *Torrey*, 16 Cal. App. (2d) 470, 472 [60 Pac. (2d) 900]; *In re Walker*, 11 Cal. (2d) 464, 467 [80

Pac. (2d) 990, 117 A. L. R. 825].) The courts of this state have had occasion to consider this exception to the general law and by interpretation of the statute have set forth the limited circumstances under which it would apply. Since the 1935 amendment did not effect a repeal of section 337a the prohibition against book-making is still in force. In *People* v. *Coiner*, 28 Cal. App. (2d) 21 [81 Pac. (2d) 1057], it was held that in spite of the "Horse Racing Act" one who is found guilty of conducting a pari-mutuel method of wagering outside the enclosure of a race track may be convicted of a violation of subdivision 2 of section 337a of the Penal Code. Finally, it has been decided that the actions of a commercial solicitor of bets, operating outside the track, receiving bets from others and never placing them himself in the manner authorized by the act, do not come within the protection of the 1935 amendment, and such actions are punishable under the provisions of the Penal Code (*In re Walker, supra*). However, the facts of the instant case are distinguishable from any of the cases heretofore adjudicated. The issue presented herein is whether an agent who solicits wagers on a commercial basis outside the enclosure of a race track and thereafter personally places the bets in a pari-mutuel machine at the track is protected by the exception set out in the 1935 amendment so that he is not guilty of a violation of section 337a of the Penal Code.

The meaning of the 1935 amendment has never been made altogether clear. However, "The policy of the state toward commercial gambling is clear and unequivocal. A mere superficial reference to the Penal Code reveals that commercial gambling in all of its phases has been uniformly condemned for many years. . . . There is nothing in the Horse Racing Act indicating the slightest intention to depart from the public policy of the state condemning commercial gambling. To the contrary, a determination to adhere to such policy is obvious." (*In re Goddard,* 24 Cal. App. (2d) 132, 140, 141 [74 Pac. (2d) 818].) If the legislature had intended to reject this long established policy of the state prohibiting commercial gambling such an intention would have been indicated in the act and the subsequent amendment; the statute, however, when read in its entirety, shows a specific intention to retain the general prohibitions.

The wording of the 1935 amendment is not susceptible of the liberal construction contended for by appellants. The words, in themselves, go no further than to indicate that any activity of the principal or better in connection with such wager shall not be considered an illegal wager. Although the facts of the recent cases construing the amendment do not present the identical problem which confronts us here these decisions indicate that the construction placed upon the amendment by appellants is not tenable. "Under petitioner's view, commercialized gambling conducted away from the track would be permitted to flourish. Individuals could establish betting centers anywhere, solicit, and place bets in any amount, so long as they communicated the amounts to the track and had the bets placed there through the machine. If this was the purpose of the amendment it radically changed the original statute and eliminated most of the protective regulations designed to prohibit widespread commercial gambling on horse races. Before such an interpretation can be upheld, the statute must clearly compel it. The statute before us does not. The only thing clear about the amendment is that the principal or better does not commit any crime." (*In re Walker, supra*, 468). In the light of such reasoning by the courts we must hold that it was not the intent of the legislature in passing the 1935 amendment to extend the exception to the general prohibition against betting on horse races to a situation wherein wagers are solicited or recorded on a commercial basis at established centers beyond the enclosure of a track even though the agent personally places the bets through the pari-mutuel machines at the track.

Furthermore appellants introduced no evidence which would definitely establish that the wagers involved herein were personally placed by Wittmayer at the race track. The most that can be said is that the police officer saw Wittmayer in front of the "Daily Double" window on one occasion and saw him go into the clubhouse on another day. If the actions of appellants came within any possible exception specified in the "Horse Racing Act" it was a matter of defense to be proved by them (*People* v. *Pierce*, 14 Cal. (2d) 639, 643 [96 Pac. (2d) 784]). For the reasons above stated appellants' activities constituted a violation of section 337a of the Penal Code and the court did not err in failing to give the instructions requested.

Appellants next argue that the evidence was insufficient to show a conspiracy on the part of Haughey and Whelan with Wittmayer. We cannot agree with this contention. A police officer testified that when he visited the premises on October 25, 1940, Haughey and Whelan were moving furniture onto the premises, that they told him they intended to start an establishment where bets could be placed on horse races and that they further stated that the method to be used by them was legal under a court decision. The evidence further showed that Whelan contracted for the advertisement in the newspaper, entered into the lease which limited the use of the premises as a "brokerage room for the placing of bets on horse races," entered into a contract for towel services upon the premises and secured from the city a brokerage license to operate. Upon their arrest Whelan and Haughey admitted in each other's presence that they owned the business. A conspiracy need not be proved by direct evidence but may be inferred from the circumstances (*People* v. *King,* 30 Cal. App. (2d) 185, 201 [85 Pac. (2d) 928] ; *People* v. *McCarthy,* 45 Cal. App. (2d) 278, 282 [114 Pac. (2d) 24] ). From the testimony summarized above the jury could properly have inferred that appellants Haughey and Whelan were conspirators with appellant Wittmayer in the illegal acts charged, and as there is substantial evidence in the record to support the finding of the jury on this question its determination is conclusive (*People* v. *King, supra,* 202; *People* v. *Kauffman,* 152 Cal. 331, 335 [92 Pac. 861]).

Appellants claim that the district attorney was guilty of misconduct in making certain statements to the jury including remarks to the effect that this was a test case and that there was no question of fact for the jury to decide. The record shows that appellants told a police officer that they intended to set up the establishment, that they had a court decision approving the legality of their method and that certain attorneys would represent them; they subsequently opened the place in spite of the policeman's warning that he would arrest them. Upon the trial of the case appellants introduced no evidence to rebut the state's evidence. Further, upon motion for an advised verdict appellants' counsel stated: "Now, I am satisfied in this case it

is purely one of law. The facts are substantially admitted. . . . '' Hence the statements complained of related to inferences which could be fairly drawn from the evidence, and under those circumstances ''much must be left to the discretion of the trial court to say whether an attorney is overstepping the boundary of legal propriety.'' (*People* v. *Burdg*, 95 Cal. App. 259, 269 [272 Pac. 816].) In any event the remarks had no bearing upon the guilt or innocence of the appellants and therefore were not prejudicial (*People* v. *Hanks*, 35 Cal. App. (2d) 290, 302 [95 Pac. (2d) 478]).

The judgments and the orders denying appellants' motions for new trial are affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied December 31, 1941, and appellants' petition for a hearing by the Supreme Court was denied January 15, 1942.