[Civ. No. 715. Fifth Dist. Mar. 30, 1967.]

H. L. FRANCIS et al., Plaintiffs and Appellants, v. COUNTY OF STANISLAUS et al., Defendants and Respondents.

William R. Lundgren for Plaintiffs and Appellants.

Frederick W. Reyland, Jr., County Counsel, Clayton M. Ham, T. W. Martz and Jonathan H. Rowell, Deputy County Counsel, for Defendants and Respondents.

CONLEY, P. J.—H. L. Francis and Merrill D. Price, who describe themselves as "... operators of cardrooms ...," brought this suit to restrain the County of Stanislaus, Dan Kelsay, its sheriff, and Alexander M. Wolfe, its district attorney, from prosecuting them for any breach of an ordinance adopted by vote of the people of Stanislaus County relative to gambling in commercial cardrooms in the County of Stanislaus. As the theory of the plaintiffs was that the ordinance was unconstitutional and, therefore, void, and that the potential threat of arrest irreparably damaged them in the conduct of their alleged lawful business, the plaintiffs claimed that they had a right to such a preliminary injunction, which was granted them, and, in due course, to a permanent injunction. (*Bueneman* v. *City of Santa Barbara*, 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895]; *McKay Jewelers, Inc.* v. *Bowron*, 19 Cal.2d 595, 599 [122 P.2d 543, 139 A.L.R. 1188]; 27 Cal.Jur. 2d, Injunctions, § 26, p. 133). Later, the cause was tried on the basis of a stipulation of facts, and, after briefing and argument, the court held that plaintiffs were not entitled to judgment, that the enactment of the ordinance was within the legitimate authority of the legislative branch of the Stanislaus County government and that it was not violative of the federal or state Constitution.

█ It is advisable to keep in mind certain general well-established principles applicable to cases of this kind. In 23 California Jurisprudence, Second Edition, Gaming and Prize Contests, section 2, pages 625-626, it is said: "... the prohibition and suppression of gambling is within the police power of the state, and since the policy of the state is to condemn commercial gambling, laws prohibiting it will not be interfered with by the courts unless they are clearly and unmistakably invalid." █ And in the same work, in section 3, pages 626-627, it is further said: "The control of gambling activities is a matter concerning which local governments, in the exercise of the police power, may enact and enforce local regulations not in conflict with the general law, for the purpose of supplementing that law. █ Hence, where the state has not attempted to cover the entire field of gaming or gambling activities, local regulation in the form of additional requirements will be upheld if such regulation is reasonable and does not conflict with the provisions of the general law." Article XI, section 11, of the California Constitution provides: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and

other regulations as are not in conflict with general laws.'' (See *In re Farrant,* 181 Cal.App.2d 231 [5 Cal.Rptr. 171] ; *In re Portnoy,* 21 Cal.2d 237 [131 P.2d 1] ; *Remmer* v. *Municipal Court,* 90 Cal.App.2d 854 [240 P.2d 92].) Unquestionably, therefore, the board of supervisors, or the people of Stanislaus County at a general election, could enact supplementary ordinances relative to the subject, which are not in conflict with state laws.

It is essential at this stage to examine the contents of the ordinance. At the very beginning, in section 1, it is made clear that there is no attempt to interfere with the state enactments relative to gambling. The ordinance neither purports to overrule nor to modify the action of the Legislature concerning certain specified gambling games. (Pen. Code, § 330.) *In re Hubbard,* 62 Cal.2d 119, 125 [49 Cal.Rptr. 393, 396 P.2d 809], holds that the State of California has not preempted the entire field of gambling or gaming, and that, pursuant to article XI, section 11, of the California Constitution, a local legislative body may supplement section 330 and other provisions of the Penal Code with ordinances which do not conflict with the state laws on the subject.

Subdivisions (a) and (b) of section 2 of the ordinance prohibit the keeping, conducting or maintenance of commercial gambling houses, as follows, while subdivision (c) of the same section prohibits gambling in such public commercial resorts:

''SECTION 2: Unlawful Games:

''(a) Gambling House Prohibited: No person shall keep, conduct or maintain any house, room, apartment or place, used in whole or in part as a gambling house or place where any game is played, conducted, dealt or carried on with cards, dice, dominos or other devices, for money, checks, chips, credit, or any representative of value, as the result of which game chance is any determining factor, except as set forth in SECTION 3 hereunder. The word 'cards' as used in this article is not intended to and shall not include games known as bridge or whist.

''(b) Permitting Use as a Gambling House: No person shall knowingly permit any house, room, apartment or place owned by him or under his charge or control to be used in whole or in part as a gambling house or place of playing, conducting, dealing, or carrying on any game, played with cards, dice, dominos or other device, for money, checks, chips,

credit or any representative of value, as the result of which game chance is any determining factor, except as set forth in SECTION 3 hereunder.

"(c) Betting: No person shall deal, operate, attend, play or bet at or against any game, as the result of which game chance is any determining factor, which game is played, conducted, dealt or carried on with cards, dice, dominos, or other device, for money, checks, chips, credit or any representative of value, in any house, room, apartment, or place, except as set forth in SECTION 3 hereunder and the subsections thereunder."

Section 3 of the ordinance is devoted to exceptions in the following language:

"SECTION 3: Exceptions: The following exceptions are made to the provisions of SECTION 2 and the subsections thereunder.

"(a) Private Games: Said provisions shall not apply to occasional private games, otherwise lawful, carried on for purely social purposes in a private home. Neither shall said provisions apply to otherwise lawful games, other than card games, conducted by a private group of customers, for the sole purpose of determining which member of said group shall pay for food, refreshments or beverages for immediate consumption by the group.

"(b) Benevolent Organizations Licensed: A license may be issued in the reasonable discretion of the Sheriff to any incorporated or chartered fraternal, labor, benevolent or charitable organization or to any religious association, which organization or association has been continuously carrying on within the County the activities for which it was organized for a period of not less than two (2) years immediately preceding making application therefor. Said license shall authorize such organization or association to conduct a game room or rooms wherein games not in conflict with any State law may be played and conducted, incidental to the other activities of such organizations, but in conformity with the provisions of this subsection. No advertising or advertising signs shall be permitted in connection with said operation. The licensee shall have a paid attendant in such room at all times when games are in progress, and it shall be his duty to report to the licensee any violation of law.

(1) Members Only: No such game room shall be open to the public, but shall be used only by the members of the respective organization or association licensed and shall be maintained in the building principally used by the licensee."

Sections 4 and 5 prescribe an application to the sheriff for licenses to conduct private card games in their quarters by incorporated or chartered fraternal, labor, benevolent, charitable and religious organizations; such licenses shall be on a one-year basis and may be renewed annually by the sheriff, except that if a written objection to the issuance of any license is filed with the sheriff, or if he recommends denial, the application must be referred by the sheriff to the board of supervisors who may then determine whether the license shall be issued. The right is given to the board of supervisors to refuse to issue a license if in their opinion ". . . the conduct of the particular game room would be or is inimical to the public health, morals, safety, peace or general welfare." If a license is revoked, the former holder must wait a year before filing a new application. The board of supervisors is forbidden to deny, suspend or revoke a license unless a hearing has been first held and notice given by the sheriff at least 10 days before the date of the hearing "addressed to the applicant or licensee at the address appearing on its application."

Section 6 of the ordinance provides that all portions of any ordinance in conflict with this one are repealed, and section 7 states that anyone violating any provision of the ordinance shall be deemed guilty of a misdemeanor for which a penalty is prescribed of a fine "not to exceed Five Hundred Dollars ($500.00) or by imprisonment in the County Jail not to exceed six (6) months, or by both such fine and imprisonment."

It should be noted in passing that the elimination of bridge and whist by section 2(a) finds approval in *In re Allen,* 59 Cal.2d 5 [27 Cal.Rptr. 168, 377 P.2d 280, 97 A.L.R.2d 1415] ; and in any event, since plaintiffs, as well as everyone else, are authorized by this provision to permit the playing of these two games, the provision does not in any way furnish a ground for their present attack.

Respondents question whether the plaintiffs are in a position to raise the question of the constitutionality of the ordinance; they are partially right in this respect. The keeping of a commercial gambling house and gambling itself are separate and different offenses. (38 C.J.S., Gaming, § 90, p. 154.) As commercial cardroom operators, plaintiffs are entitled to question whether they are unconstitutionally discriminated against by reason of the fact that they are

forbidden to carry on all of the same gambling games in their commercial cardrooms that are permitted to private organizations by the exceptions contained in section 3 of the ordinance; they sue wholly as operators of commercial cardrooms; they do not sue as individuals desiring to play any such games. We are necessarily limited to the inquiry whether or not the people of Stanislaus County, voting at a general election, have a constitutional right to enact this ordinance as against the owners or operators of commercial gambling houses. It is the maintenance of public gambling places on a commercial basis that is eliminated by this ordinance, and the only ground upon which the plaintiffs may base their attack is what they allege in their complaint. The plaintiffs seek in vain to attack the enactment from the standpoint of some hypothetical individual gambler by arguing that the ordinance will prevent those individuals from playing such games who cannot, or will not, join a benevolent or charitable organization or who were dissatisfied with playing them occasionally as private social games; they say that those who are precluded from joining such organizations by race, color, or religion cannot immediately form a lodge or fraternal society of their own and get permission to play, for to be entitled to a license such an organization would have to be in existence for at least two years preceding the application; they argue that privileges are thus being granted to arbitrarily selected classes, and that there is no reasonable distinction justifying the theoretical exclusion of such hypothetical persons.

The plaintiffs have no right to attempt to speak for persons other than themselves and their attack must necessarily be limited to their own businesses as the conductors of cardroom gambling and to the allegations contained in their complaint.

The general rule applicable to this situation is thus stated in 11 California Jurisprudence, Second Edition, section 69, pages 396-398: ''In order to raise the question of the constitutionality of a statute or ordinance alleged to be discriminatory in nature or operation, the party complaining must show that he is a party aggrieved, in that he is an individual or member of the class discriminated against. In other words, if one would successfully assail a law as unconstitutional, he must show that the feature of the act complained of operates to deprive him of some constitutional right, or the enjoyment of some constitutional privilege, unless there is some reason why he should be excepted from the general rule. It follows

that the constitutionality of police regulations should be raised by parties who claim to be injuriously affected.''

In considering the facts involved in *Murphy* v. *California,* 225 U.S. 623, 631 [56 L.Ed. 1229, 1233, 32 S.Ct. 697, 699], the United States Supreme Court passed similarly on the question whether or not the defendant was entitled to raise the question of discrimination as between the owners of a hotel with 25 rooms and one having less than 25 rooms, saying: ''If, as argued, there is no reasonable basis for making a distinction between hotels with twenty-five rooms and those with twenty-four rooms or less, the plaintiff in error is not in position to complain, because, not being the owner of one of the smaller sort, he does not suffer from the alleged discrimination.''

That the plaintiffs are necessarily restricted in their arguments to points applicable to them as commercial cardroom operators is well established. (*Estate of Johnson,* 139 Cal. 532, 534 [73 P. 424, 96 Am.St.Rep. 161]; *People* v. *Globe Grain & Mill Co.,* 211 Cal. 121, 128 [294 P. 3]; *In re Weisberg,* 215 Cal. 624, 630 [12 P.2d 446]; *Fox-Woodsum Lumber Co.* v. *Bank of America etc. Assn.,* 7 Cal.2d 14, 22 [59 P.2d 1019]; *Franklin* v. *Peterson,* 87 Cal.App.2d 727, 730-731 [197 P.2d 788]; *In re Durand,* 6 Cal.App.2d 69, 70 [44 P.2d 367]; *Hooker* v. *Burr,* 137 Cal. 663, 671 [70 P. 788, 99 Am.St.Rep. 17]; *Ex parte Quong Wo,* 161 Cal. 220, 233-234 [118 P. 714]; *In re Willing,* 12 Cal.2d 591, 597 [86 P.2d 663]; *Ray* v. *Parker,* 15 Cal.2d 275, 283 [101 P.2d 665]; *People* v. *Naumcheff,* 114 Cal.App.2d 278, 280 [250 P.2d 8]; *California State Auto. etc. Bureau* v. *Downey,* 96 Cal.App.2d 876, 907 [216 P.2d 882]; *Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446, 468 [55 P.2d 177]; *Aikins* v. *Kingsbury,* 247 U.S. 484 [62 L.Ed. 1226, 38 S.Ct. 558]; *Aikins* v. *Kingsbury,* 170 Cal. 674 [151 P. 145]; *In re Zhizhuzza,* 147 Cal. 328 [81 P. 955]; *DuBois* v. *Land,* 212 Cal.App.2d 563, 567 [28 Cal.Rptr. 167]; *People* v. *Walton,* 70 Cal.App.2d 862, 865-866 [161 P.2d 498].)

The issue to be determined then in this case is whether or not an ordinance of the County of Stanislaus applicable outside of the city limits of incorporated cities in that county, and which forbids commercial cardrooms maintained for the purpose of gambling therein, is unconstitutionally discriminatory in that private persons and certain qualified religious, labor and fraternal organizations, in their homes or in private club rooms, may carry on social games at which the element of chance is incidentally involved.

The attack on such an ordinance is made on the grounds that it violates the Fourteenth Amendment of the federal Constitution and also article I, sections 11 and 21, of the California Constitution. In *County of Los Angeles* v. *Southern Cal. Telephone Co.*, 32 Cal.2d 378, 389 [196 P.2d 773], it is said: ". . . the test for determining the validity of a statute where a claim is made that it unlawfully discriminates against any class is substantially the same under the state prohibitions against special legislation and the equal protection clause of the federal Constitution." (*People* v. *Western Fruit Growers, Inc.*, 22 Cal.2d 494, 506 [140 P.2d 13]; *McCreery* v. *McColgan*, 17 Cal.2d 555 [110 P.2d 1051, 133 A.L.R. 800].)

Article I, section 21, of the California Constitution reads as follows: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

Well-known general rules with respect to presumptions as to constitutionality are thus expressed in 11 California Jurisprudence, Second Edition, section 74, pages 407-408: "The undisputed general rule is that all presumptions and intendments are in favor of the constitutionality of statutes; that all doubts are to be resolved in favor of and not against the validity of a statute; that before an act of a co-ordinate branch of the government can be declared invalid by the judiciary for the reason that it is in conflict with the constitution, such conflict must be clear, positive, abrupt, and unquestionable; and that in case of fair, reasonable doubt of its constitutionality, the statute should be upheld, and the doubt resolved in favor of the express wishes of the people as set forth in the statute. The same presumptions that favor the constitutionality of an act passed at a regular session of the legislature apply also to acts passed at a special session, to ordinances, to the statutes of sister states, and to federal statutes."

The same and other equally familiar rules are thus stated approvingly in *State of California* v. *Industrial Acc. Com.*, 48 Cal.2d 365, 371-372 [310 P.2d 7], quoting from an earlier Supreme Court case: ". . . in *Sacramento M.U. Dist.* v. *Pacific Gas & Elec. Co.* (1942) 20 Cal.2d 684, 693 [5] [128 P.2d 529], it is declared that 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the

classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' Further, *In re Herrera* (1943) 23 Cal.2d 206, 212 [2] [143 P.2d 345], the rule is again quoted that 'The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act. . . .' (See also *Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620, 636 [1] [91 P.2d 577].) In *Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701], involving the constitutionality of section 1101 of the Labor Code, it was once more pointed out that 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. [Citations.]' And in *Lelande* v. *Lowery* (1945) 26 Cal.2d 224, 232 [6], 234 [7] [157 P.2d 639, 175 A.L.R. 1109], the court declared that 'When the classification made by the Legislature is questioned, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts is presumed, and one who assails the classification must carry the burden of showing that it is arbitrary. [Citations.] . . . [I]t is not our concern whether the Legislature has adopted what we might think to be the wisest and most suitable means of accomplishing its objects. [Citations.]' (See also *City of Walnut Creek* v. *Silveira* (1957) 47 Cal.2d 804, 811 [306 P.2d 453].) ''

It is, of course, the duty of the courts to uphold the legislative acts of the government if it can be done in conformity with constitutional requirements. (11 Cal.Jur.2d, Constitutional Law, § 76, p. 410.)

The principles applying to acts of the state Legislature are also applicable to the legislation of those organs of local government which enact municipal ordinances. (*People* v. *Walton, supra,* 70 Cal.App.2d 862; *Sheward* v. *Citizens' Water Co.,* 90 Cal. 635 [27 P. 439]; 11 Cal.Jur.2d, Constitutional Law, § 79, pp. 413-415.)

With respect to the classification of persons as to which a

given law or ordinance might be applicable, 11 California Jurisprudence, Second Edition, Constitutional Law, section 272, pages 717-718, states as follows: ''Neither the equal protection clause of the United States Constitution nor the provisions of the state constitution requiring all laws of a general nature to have a uniform operation, prohibiting the granting of special privileges and immunities, and prohibiting the enactment of local or special laws where a general law can be made applicable prevent classification by the legislature or require that statutes operate uniformly with respect to persons or things that are in fact different. Thus, it is not true that any law designed to operate upon a particular class of persons or property necessarily involves special legislation, or is wanting in uniformity of operation, or denies to a person the equal protection of the laws, within the meaning of the constitutional guaranties relating to those subjects. If the law is to bear equally upon all persons, the legislature must classify whenever there exists a reason which may rationally be held to justify a diversity of treatment. In the matter of classification for legislative purposes, the states retain a wide discretion. And the test for permissible classification is substantially the same under the state prohibitions against special legislation and the equal protection clause of the federal Constitution.''

In considering this ordinance, it is to be presumed that the legislative body made inquiry in due course to determine whether there were evils to be remedied, and that the classification recognized in the ordinance was the result of such inquiry. (*In re Girard*, 186 Cal. 718 [200 P. 593].)

In reviewing a situation of this kind, this court may resort to its judicial knowledge of contemporaneous conditions. The case of *Martin* v. *Superior Court*, 194 Cal. 93, 100-101 [227 P. 762], has the following to say: ''A law is not special legislation merely because it does not apply to all persons. It is a settled principle of constitutional law that the legislature may classify for the purpose of meeting different conditions, naturally requiring different legislation, in order that legislation may be adapted to the needs of the people. If the law is to bear equally upon all persons, the legislature must classify whenever there exists a reason which may rationally be held to justify a diversity of legislation. In other words, different persons, different localities, and different governmental organizations and agencies may justly be found· by the legislature to stand in different relations to the law and

if the same law were, in such a situation, to be applied to all alike, it would not bear equally upon each of them. (*Darcy* v. *Mayor etc. of San Jose,* 104 Cal. 642 [38 P. 500]; *In re Sumida,* 177 Cal. 388 [170 P. 823].)

"The classification, however, must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for and justifies the particular legislation. That is to say, not only must the class itself be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attributes which suggest the need for and the propriety of the legislation. Subject to these limitations a law is general despite the fact that it operates only upon a class of individuals or things, if it applies equally to all persons or things within the class to which it is addressed. [Citations.]

"The power to thus classify necessarily carries with it a wide discretion in the exercise thereof. The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason. (*In the Matter of a Proceeding to Validate the Sutter-Butte By-Pass Assessment No. 6 of the Sacramento and San Joaquin Drainage Dist.,* 191 Cal. 650 [218 P. 27].) It follows that in any given case if the existence of a state of facts of which the court may take judicial notice seems to have been made the basis of a particular piece of legislation and if it may be reasonably said that such facts afford good ground for the making of a particular classification the legislative enactment will be upheld although the reason therefor does not appear *prima facie* in the law itself."

With respect to some businesses which deal in products or activities essential to the public welfare, the legislative branch of government may control anything which relates to, or affects, the health of the community generally; fair examples of this kind of business thus subject to regulation are dairies, canneries, clothes cleaning establishments, and similar institutions whose conduct if loose or inattentive might affect

the health, or well being, of members of the community. But there is another type of business which deals not with essentials but chiefly with matters of entertainment, the continuance of which is not essential to the health and well-being of the people, and the tendency of which is immoral or vicious; these businesses the legislative body may absolutely prohibit. (*Ex parte Tuttle,* 91 Cal. 589 [27 P. 933].)

As correctly stated in 40 Opinions of the Attorney General of California at page 48 ''. . . it is important to note that gambling is an activity, like the sale of intoxicating liquor, which is subject to strict regulations or absolute prohibition. (*In re O'Shea,* 11 Cal.App. 568 [105 P. 776]; *People* v. *Haughey,* 48 Cal.App.2d 506 [120 P.2d 121]; *Murphy* v. *California,* 225 U.S. 623, 56 L.Ed. 1229, 32 S.Ct. 697.)'' Commercial cardrooms fall within this latter classification; and the appropriate legislative body may absolutely prohibit the operation of cardrooms devoted to gambling. Such commercially operated cardrooms, in the opinion of the legislative branch of government, are actual or potential menaces to the peace and welfare of the general public and they may be regulated by law, even to the point of elimination. They tend to attract professional gamblers and other people who have no regular beneficial employment but who hope to be gainers without working and entirely by chance, thus promoting idleness and the gambling spirit. Such attraction is so overtly present in businesses of this kind that the peace officers of a city or county where such commercial cardrooms used for gambling are permitted are frequently over-burdened in carrying out their duty to maintain law and order. Gambling in its worst aspects is encouraged in such places.

On the contrary, in social cardrooms of labor, fraternal and religious organizations the tempo of the games is under relative control, and the people participating in them do so normally for their own amusement. The critical circumstances that frequently accompany activities in commercial cardrooms are normally absent in most organizations of the permissive type. There is a vast difference between card games supervised and played in the social rooms of the organizations specified in section 3 of the ordinance, and those operated commercially for general participation by the public at large.

*In re Girard, supra,* 186 Cal. 718, 722-723, held that the provision of law permitting trustees created by a will or by a court order in a judicial proceeding to sell securities issued by such trustees without a permit, while forbidding the same

practice in the situation of a trust created by an instrument in writing between individuals, was not unconstitutional, the court saying "We cannot declare a law unconstitutional in the matter of discrimination unless there is no rational doubt that it improperly discriminates between persons similarly situated. We must presume that the legislature made inquiry to determine whether or not there were evils which required regulation, and that upon such inquiry it was ascertained that the mischief sought to be corrected was being done under the form of trusts created by private individuals and not under the form of testamentary trusts or trusts declared in judicial proceedings. The trust here involved is a striking example of the practices which the legislature intended to prevent. The corporation commission[er] is required to investigate concerning the assets of such a trust and to refuse to permit it to do business unless upon such investigation he finds that the proposed plan of business is not unfair, unjust, or inequitable, and that the company intends to fairly and honestly transact its business, and that the securities it proposes to issue and the methods to be used in disposing of the same are not such as in his opinion will work a fraud upon the purchaser."

In support of the ruling, the court refers in the opinion to *In re Spencer,* 149 Cal. 396, 401 [86 P. 896, 117 Am.St.Rep. 137, 9 Ann.Cas. 1105], holding that a classification of children with respect to denying their employment in certain occupations depended upon the facts and that it was for the Legislature to ascertain and determine the facts.

In an opinion in the case of *In re Lawrence,* 55 Cal.App.2d 491 [131 P.2d 27], the Court of Appeal of the Second Appellate District held that an ordinance of Long Beach prohibiting "pin games" or "marble games" was within the police power of the city, even though such games were permitted by ordinance in private houses and in certain delineated amusement zones. In the course of the opinion it was held that the reasonableness of the classification was largely one resting in the discretion of the legislative body and that the court should not interfere where such discretion has been sensibly exercised. (See also *Sharpe* v. *Johnson,* 81 Cal.App.2d 939 [185 P.2d 340].)

The holdings of the courts in this state permitting gambling on race horses by approved mechanical means in restricted race track areas, while prohibiting betting on race horses any place else, go a long way toward approving the classification made by the voters of Stanislaus County in this instance.

There is no question that the policy of this state is against commercial betting, or that it is illegal to place a bet on a race horse outside the limited areas at race tracks; nevertheless betting is permitted through the use of the totalizer at race courses.

In *People* v. *Sullivan*, 60 Cal.App.2d 539, 543-544 [141 P.2d 230], the following quotation is taken from *People* v. *Haughey*, 48 Cal.App.2d 506, 511 [120 P.2d 121] : " 'However, "The policy of the state toward commercial gambling is clear and unequivocal. A mere superficial reference to the Penal Code reveals that commercial gambling in all of its phases has been uniformly condemned for many years. . . . There is nothing in the Horse Racing Act indicating the slightest intention to depart from the public policy of the state condemning commercial gambling. To the contrary, a determination to adhere to such policy is obvious." (*In re Goddard*, 24 Cal.App.2d 132, 140, 141 [74 P.2d 818].) If the legislature had intended to reject this long established policy of the state prohibiting commercial gambling such an intention would have been indicated in the act and the subsequent amendment; the statute, however, when read in its entirety, shows a specific intention to retain the general prohibitions.' " The court in the *Sullivan* case then said: "There can be no question of the right of the Legislature under the police power to regulate gambling, which includes betting on horse racing. We must next consider the reasonableness of the classification made by the statute." The court proceeded to approve the classification made by the Legislature, saying that the classification is general in its application and that it ". . . applies uniform rules of conduct for all those coming within the scope of its application and may not be challenged because of any denial of equal protection of the law to those on whom it operates because others differently situated and within a different legal classification may not be affected by its terms."

That the exceptions in the Stanislaus County ordinance are legitimate subjects of legislative differentiation was, it seems to us, conclusively established in the litigation involving a South Pasadena ordinance forbidding the maintenance of commercial pool rooms. The origin of that constitutional inquiry is first reported in *Ex parte Murphy*, 8 Cal.App. 440 [97 P. 199]. The denial of a writ of habeas corpus by the appellate court was later approved by the California Supreme Court in a memorandum opinion reported as *In re Murphy* in 155 Cal. 322 [100 P. 1134]. The litigation ended in the

United States Supreme Court (*Murphy* v. *California, supra,* 225 U.S. 623 [56 L.Ed. 1229, 32 S.Ct. 697]); the upper court reviewed the judgment affirming the conviction in the Recorder's Court of South Pasadena for keeping billiard or pool tables for hire, or public use, in violation of the ordinance and the lower court's judgment was affirmed.

The South Pasadena ordinance was entitled "An Ordinance for police regulation relating to billiard halls, pool rooms, and places where billiards and pool tables are kept for hire or public use in the city of South Pasadena." The Court of Appeal stated that it was clear that the measure was not adopted to raise money for the city, but that the purpose was to prohibit, that the authority to enact the ordinance was found in article XI, section 11, of the California Constitution allowing a city or a county to make police regulations not in conflict with general laws, and that illustrations of the exercise of this power are contained in ordinances prohibiting the sale of intoxicating liquors, and the suppression of gambling. That court also said that the business of conducting a public billiard hall and pool room was not per se a nuisance; the petitioner had insisted that unless the business were held to be immoral or a nuisance per se it was not subject to the exercise of the city's police power to the extent that it could be prohibited, but that billiard halls and pool rooms fall within a class, "the conduct of which might, by reason of the character of the business, prove obnoxious or injurious to health," and that as to such businesses, which might include laundries, canneries, and soap factories, the power of a municipality is to "regulate" only; the court disagreed with this argument and said that citizens possess no inherent right "to conduct for profit a public place intended purely for the amusement of its patrons, the tendency of which is immoral or vicious." The opinion quotes from a prior case where it is said that " 'Any practice or business the tendency of which as shown by experience is to weaken or corrupt the morals of those who follow it, or to encourage idleness instead of habits of industry, is a legitimate subject for regulation or prohibition.' (*Ex parte Tuttle*, 91 Cal. 589 [27 P. 933], . . .)" Continuing, the appellate court held that a public pool room, because of its environment, might be a danger to the morals of the citizens and, consequently, that it is subject to regulation even to the point of absolute prohibition even though it is not a nuisance per se. It was also stated that measures of regulation might be adequate in some communities, while in

others absolute suppression of the business might be necessary, but that "the extent to which the power shall be exercised is a matter for the legislative body of the municipality to determine."

The petitioner in the *Murphy* case argued that the ordinance was void, because it was class legislation in that it did not apply to proprietors of hotels having 25 or more furnished bedrooms and using a general register for guests, but the court stated that this argument was not valid, because the ordinance was directed at persons keeping billiard halls and pool rooms for hire or public use, and its provisions applied to all who fell within that class; that it prohibited everyone from engaging in that business; that the provisions did not apply to an individual keeping a pool table in his house for the use of himself and guests or to the major hotel keeper who maintained tables for use of guests only.

The California appellate court in the *Murphy* case, *supra,* finally said at page 448 of 8 Cal.App.: " 'The law is well settled in this state as has been shown by the authorities already cited, that where a business is not a useful occupation, such as conducting a saloon, and many kindred places, the Supreme Court has always upheld the power that has been vested in a board or in a person to say whether such person shall have a license or not. Consequently, the many authorities cited by petitioner which involve the right to conduct lawful and useful businesses, such as . . . [laundries or dairies] and other cases of similar character, have no application to the case at bar.' "

In the United States Supreme Court opinion in the *Murphy* case, it is stated that there was no contention that the provisions permitting hotels of a certain size to maintain a room in which their regular registered guests might play were evasively inserted as a means of permitting the proprietors to keep tables for hire, and it was not claimed that the ordinance was being unequally enforced, and that if the hotel owner allowed his rooms to be used for playing billiards by other than regular guests or if the tables were to be used for hire, he would be guilty of a violation of the ordinance.

It is clear then that the county, exercising its police power could enact a proper ordinance to forbid commercial cardrooms, while allowing card playing in private homes or in the private quarters of certain organizations, so long as the rooms were not operated for hire.

The appellants, among other things, cite two cases from

foreign jurisdictions, which they believe help their position. We cannot join them in this belief. One of the cases is *Fairchild* v. *Schanke,* 232 Ind. 480 [113 N.E.2d 159]. In that case, the Indiana enactment which was being construed on its face stated that it was applicable to eliminate all gambling for profit; it then sought to make exceptions similar to those made in the present ordinance, but the Supreme Court there held that, in view of the statement in the statute that all gambling under certain conditions was banned, there was no opening to make the attempted exceptions. The second case is *Harriman Institute of Social Research, Inc.* v. *Carrie Tingley Crippled Children's Hospital,* 43 N.M. 1 [84 P.2d 1088]. In the construction of the statute involved in that New Mexico case, the Supreme Court of that state pointed out that the statute permitting a lottery at a state fair "when all the proceeds of such fair shall be expended in this state . . . for charitable purposes" did not authorize the operation of such a device for less than all of the proceeds. Neither of these cases, in view of the differentiation of facts and the statutes involved, is helpful to the appellants.

It is our view that the people of Stanislaus County were within their rights in enacting the ordinance in question insofar as any attack upon it by the plaintiffs in this case is concerned.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.