[Civ. No. 20184. Third Dist. Sept. 24, 1981.]

NATHANIEL C. JOHNSON et al., Plaintiffs and Appellants, v. DEPARTMENT OF SOCIAL SERVICES et al., Defendants and Respondents.

COUNSEL

Terence W. Roberts for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, and Elisabeth C. Brandt, Deputy Attorney General, for Defendants and Respondents.

OPINION

**CARR, J.**—Appellants Nathaniel and Susan Johnson (Johnsons) appeal from a judgment by the court denying them declaratory relief and upholding the constitutionality of a regulation of respondent Department of Social Services.

The Johnsons are licensed by the State Department of Social Services (Social Services) to operate a private day care and preschool center. The children cared for are predominantly preschool age but some are aged six, seven and eight years and care is provided for the times before and after public school attendance.[1] The Johnsons wish to contract with their parent-clients to administer a policy of discipline which would include corporal punishment for the children in their charge, to be administered as they, in their discretion, see fit.

---

[1] We note from the minute order of the trial court that a reporter was present but we have been provided with no reporter's transcript. Our review is necessarily limited to the trial court's findings of fact and conclusions of law and the judgment entered thereon. The trial court's notice of intended decision, though not controlling, is helpful in determining the court's reasoning.

Social Services declines to permit such regime of discipline which is prohibited by a regulation set forth in section 31239, subdivision (d) of title 22, California Administrative Code which provides:

"(d) Discipline. Constructive methods must be used for maintaining group control and handling individual behavior.

"Corporal punishment and other humiliating or frightening techniques are prohibited.

"Punishment must not be associated with food, rest, isolation for illness or toilet training."

As a condition to obtaining their license Johnsons were required by Social Services to state in writing that they would refrain from using corporal punishment, including spanking, and would delete all references to spanking and/or corporal punishment from the advertising and admission agreements.

In respect to public schools, corporal punishment may be administered with prior written consent of the parent if the governing board of the district adopts rules and regulations authorizing "teachers, principals and other certificated personnel to administer reasonable corporal punishment." (Ed. Code, §§ 49000, 49001.)

Essentially, the Johnsons challenge a policy decision by Social Services to prohibit corporal punishment in licensed day care centers.

They assert in this court, as in the trial court, that 1) the policy set forth in section 31239, subdivision (d), title 22, California Administrative Code violates the equal protection clause of the Fourteenth Amendment of the United States Constitution by establishing a suspect classification in that parents of children similarly situated are subject to disparate treatment; 2) that the regulation affects fundamental rights of parenting, and 3) no compelling state interest is served by the regulation.

For reasons set forth herein, we find the trial court was correct in holding the policy established by the regulation neither violates equal protection nor infringes upon a fundamental right and we affirm the judgment.

## I

It is not addressed by the parties but this case raises a very close question of appellants' standing to assert third party constitutional rights. The general rule is appellants must allege they belong to the class of persons whose constitutional rights they assert. ██ "[A] charge of unconstitutional discrimination can only be raised in a case where this issue is involved in the determination of the action, and then *only by the person or a member of the class of persons discriminated against.*" (*People* v. *Globe Grain & Mill. Co.* (1930) 211 Cal. 121, 127-128 [294 P. 3]; italics added; *Estate of Horman* (1971) 5 Cal.3d 62, 77-78 [95 Cal.Rptr. 433, 485 P.2d 785]; *Lumber Co.* v. *Bank of America etc. Assn.* (1936) 7 Cal.2d 14, 22 [59 P.2d 1019]; *A.F. Estabrook Co.* v. *Industrial Acc. Com.* (1918) 177 Cal. 767 [177 P. 848]; *Stocks* v. *City of Irvine* (1981) 114 Cal.App.3d 520, 531 [170 Cal.Rptr. 724]; *Francis* v. *County of Stanislaus* (1967) 249 Cal.App.2d 862, 868-869 [57 Cal.Rptr. 881].) Appellants claim injury to themselves based on an impairment of their contract with the parents of children in the nursery because of state action which prevents them from administering corporal punishment. They thus vicariously assert the parents' alleged constitutional right to permit corporal punishment. A somewhat analogous jus tertii was allowed in *Craig* v. *Boren* (1976) 429 U.S. 190 [50 L.Ed.2d 397, 97 S.Ct. 451]: "[A]ppellant . . . is entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail and the statutes remain in force. *Griswold* v. *Connecticut*, 381 U.S. 479 (1965)."[2] (P. 195 [50 L.Ed.2d p. 405].)

In the case at bar parents of children attending appellants' nursery arguably face a possible dilution of their constitutional rights by application of respondent's regulation banning appellants from administering corporal punishment. We have some reservations about appellants' standing in this action; however, we address the merits.

## II

██ The initial step when a violation of equal protection is urged is to determine if the purported classification affects classes of persons

---

[2]The dilution of third party rights as a basis for granting standing rests on the idea that exercise of the third party's rights are dependent on his relationship with the claimant. (See Comment, *Standing to Assert Constitutional Jus Tertii* (1974) 88 Harv.L.Rev. 423, 431-436.)

who are "similarly situated." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; *In re Roger S.* (1977) 19 Cal.3d 921, 934 [141 Cal.Rptr. 298, 569 P.2d 1286].)[3]

 Appellants' contention fails at this first step; the two groups are not "similarly situated."[4] Children in appellants' preschool generally are younger than children in public schools with correspondingly distinct behavioral and cognitive abilities and requirements. The trial court found that "because of the ages of children cared for by [appellants], most would lack the verbal skills and ability to protest abusive punishments." As the name implies, a preschool is not a school. Although in some respects the functions of each overlap, one does not replace the other.

Appellants operate a day nursery as a private business in contrast to public schools. Day nurseries, like that of appellants, must be licensed by the California State Department of Social Services. (Cal. Admin. Code, tit. 22, § 86003.) The department uses the licensing requirements to ensure that day nurseries meet the minimum standards set forth in title 22, California Administrative Code, section 31191 et seq. These sections address the quality of care, safety, building and grounds, personnel and administration. They do not regulate education of children in day nurseries. Enforcement of the standards is through the granting or revocation of licenses (Cal. Admin. Code, tit. 22, § 86011) and by inspections of facilities by the department (Cal. Admin. Code, tit. 22, § 86026). The Department of Social Services derives its authority from section 1530 of the Health and Safety Code.

For public schools, the standards are much more extensive. Unlike day nurseries, which are primarily care facilities, the fundamental purpose of a public school is education. (Ed. Code, § 33080.) Accordingly, with respect to public schools, the Education Code addresses such matters as courses of study (Ed. Code, § 51200 et seq.), instructional materials and testing (Ed. Code, § 60000 et seq.), pupil rights and responsibilities (Ed. Code, § 48900 et seq.) and many other topics found

---

[3]"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J., supra,* 25 Cal.3d at p. 530; original italics.)

[4]Because of appellants' failure to provide a reporter's transcript, the record is devoid of factual evidence that the two groups are "similarly situated."

in title 2 regulating elementary and secondary schools. Hence, while the essential function of day nurseries is to provide care and safety, the more expansive function of public schools is to provide education.

Another important and related differentiation is the level of training and accountability of personnel. With respect to day nurseries, title 22, California Administrative Code, section 31199 et seq. prescribes the level of education for directors, nursery aides, nursery teachers and other staff. A nursery aide, defined as one continually in contact with children at a day nursery, needs only a high school education and some experience with children. (Cal. Admin. Code, tit. 22, § 31207.) This category of employee would most likely administer discipline to day nursery children.

A higher level of education is required of public school employees. Education Code, section 44200 et seq. sets forth the scheme of statutes California uses for issuance of a certificate or teaching credential. Title 2, chapter 2 of the Education Code concerns teacher preparation and licensing. Article 2 establishes a commission for determining necessary credential requirements and article 3, a committee to aid the commission. The qualifications are under constant review. Article 5 pertains to the examinations one must pass to obtain a teaching credential and article 8 provides additional requirements. Teachers must go through an internship program (Ed. Code, § 44450 et seq.) which requires a baccalaureate degree for admission. (Ed. Code, § 44453.)

The statutes and regulations which pertain to each type of facility reflect the differences in their respective functions and the general difference in the age and needs of children under their care. We conclude that parents of children in day nurseries are not "similarly situated" to parents of children in public schools for purposes of the equal protection argument asserted by appellants herein.

### III

■ The Johnsons next assert that parenting with its concomitant decisions on rearing, care and education, is a fundamental right of personal liberty and any infringement thereof assumes constitutional dimensions. Social Services concedes that as to the parents themselves, parenting is a fundamental right. (See *Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208]; *In re B.G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Angelia*

*P.* (1981) 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198].) However, we are here concerned with the delegation by the parents to third parties, and particularly state-licensed care facilities, of the rights of discipline by corporal punishment. We have been cited to no case which holds a state may not by regulation prohibit parents from either allowing or requiring others to administer corporal punishment to their children. Parenting as a fundamental right is personal in nature. When parents delegate to third parties those decisions regarding child rearing, care, discipline and education, such delegation does not carry with it the constitutional protections inherent in the right of the parents. Moreover, this parental duty and right is tempered by and subject to limitations. When parental decisions may jeopardize the health or safety of a child, the state may assert important interests in safeguarding that health and safety. (See *Wisconsin* v. *Yoder* (1972) 406 U.S. 205, 234 [32 L.Ed.2d 15, 35, 92 S.Ct. 1526]; *Kate' School* v. *Department of Health* (1979) 94 Cal.App.3d 606 [156 Cal.Rptr. 529].)

Johnsons urge that the state is subject to a heavy burden in justifying any restriction of the parents' right to control and direct the care and upbringing of their children. We concur insofar as the state attempts to reach into the home and regulate the direct relationship between parent and child. We do not perceive that parents possess a correlative fundamental right to extend their control to the out-of-home situation.

## IV

Finally, the Johnsons contend no compelling state interest is served by the regulation. In view of our determination that the classification in question does not affect classes which are similarly situated and that an otherwise constitutionally protected fundamental right is not at issue, it is unnecessary that a compelling state interest be demonstrated. We do observe that a rational state purpose for such regulation exists. Critical distinctions between public schools and the entity at issue, a private day care and preschool center, have been earlier set forth. In addition, a public school district is a public agency accountable to a number of supervisorial bodies and to the public through the political process. A community care facility, such as operated by the Johnsons, is a private business not subject to public scrutiny and controlled only through the state license revocation process.

The Johnsons contend the regulation in question interferes with a more important state interest than that of protecting the health and safety of a child; that is, the paternal right to determine discipline. We suggest the respective interests and rights are being confused. The parental right is to determine discipline. The state's interest is in protecting the health and safety of the child from parental discipline decisions which may jeopardize that child's health and safety.

Johnsons further philosophize that juvenile delinquency and crime, drug abuse, sexual freedom and permissiveness are rampant because parents refuse to discipline their children or impose only minimal discipline. The suggested solution to this perceived problem is to relieve permissive parents from the onus of discipline and relegate it to day care personnel, who presumably will be knowledgeable in the use of the rod but opposed to spoiling the child. We do not share the optimistic view of the Johnsons that all day care operators are nurturing surrogate parents. Day care centers are licensed businesses, engaged in the profit-producing enterprise of caring for children when their parents are unavailable because of work or other reasons. Hopefully, such care will include not only attention to physical needs but also guidance and concern for the emotional needs of the child. But to expect that the changing personnel of such businesses will rear the children in their charge to become decent, law-abiding citizens if such personnel are only given the right to impose corporal punishment discipline is unrealistic.

The judgment is affirmed.

Puglia, P. J., and Reynoso, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 18, 1981.