31 Cal.App.3d 5 (1973)
106 Cal. Rptr. 612
THE PEOPLE, Plaintiff and Appellant,
v.
PHILLIP OLAGUE, Defendant and Respondent.
Docket No. 11667.
Court of Appeals of California, Appellate Department, Superior Court, Los Angeles.
February 21, 1973.
*6 COUNSEL
Joseph P. Busch, District Attorney, Harry Wood and Daniel L. Lieberman, Deputy District Attorneys, for Plaintiff and Appellant.
Richard S. Buckley, Public Defender, James L. McCormick, Floyd W. Davis and Lawrence E. Biegel, Deputy Public Defenders, for Defendant and Respondent.
*7 OPINION
HOLMES, J.
The orders of the municipal court sustaining respondent's demurrer and dismissing the action raise only the question of whether the challenged statute is unconstitutional on its face. We address ourselves to that question only.
Section 270 of the Penal Code has been before the appellate courts many times. It is held to have important public objectives for the support of children (In re King (1970) 3 Cal.3d 226, 233 [90 Cal. Rptr. 15, 474 P.2d 983] cert. den. 403 U.S. 931 [29 L.Ed.2d 709, 91 S.Ct. 2249]). The means prescribed under this statute to further its legitimate objectives is for local law enforcement agencies to initiate a judicial inquiry as to the willingness and ability of a father to support his child. The state must first prove that the accused is the father and that the child has been abandoned or deserted by the father or that the father has omitted to supply necessaries of life to the child. If these elements are proved, it then becomes the father's burden to prove that his default was not wilful or without excuse. If he fails to discharge that burden he is criminally liable. If he meets his burden of proof, like proceedings are authorized to be taken against the mother.
The issue raised in this case is whether the statute is so unreasonable on its face as to create an invidious discrimination between fathers and mothers, thereby denying equal protection of the law to fathers.
In order to decide that issue it is necessary to determine which of the "two level" standards this statute must meet in order to pass the test of legality laid down in equal protection cases (In re Antazo (1970) 3 Cal.3d 100, 110 [89 Cal. Rptr. 255, 473 P.2d 999]; D'Amico v. Board of Medical Examiners[*] (Cal. App.) 105 Cal. Rptr. 639).
Ever since the Penal Code was adopted in 1872, section 270 has expressed the policy of the state that both parents are responsible for support of their children. In People v. Sorenson (1968) 68 Cal.2d 280 at page 287 [66 Cal. Rptr. 7, 437 P.2d 495, 25 A.L.R.3d 1093], the court said: "Rather than punishment of the neglectful parents, the principal statutory objectives are to secure support of the child and to protect the public from the burden of supporting a child who has a parent able to support him."
The statute is thus seen to reflect a basic state concern for the survival of children. The manner of enforcement is secondary. We, therefore, are *8 dealing only with the narrow issue of the right of the state to enforce the undoubted duty of both parents to support their children (Civ. Code, § 206) by proceeding initially against the father and secondarily against the mother. Stated bluntly, the interest espoused herein by the respondent is his desire to evade a basic legal obligation. We are not dealing with a fundamental personal or political right, such as the right of a parent to the association and comfort of his child (Stanley v. Illinois (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]), or to engage in gainful employment (Phillips v. Martin Marietta Corp. (1971) 400 U.S. 542 [27 L.Ed.2d 613, 91 S.Ct. 496], Sail'er Inn, Inc. v. Kirby (1971) 5 Cal.3d 1 [95 Cal. Rptr. 329, 485 P.2d 529, 47 A.L.R.3d 351]), or to exercise equal voting rights (Carrington v. Rash (1965) 380 U.S. 89 [13 L.Ed.2d 675, 85 S.Ct. 775]); nor is this a case where no legitimate state objective is involved (Reed v. Reed (1971) 404 U.S. 71 [30 L.Ed.2d 225, 92 S.Ct. 251]; In re Antazo, supra, 3 Cal.3d 100).
Neither is this a case of "suspect classification" on the basis of sex. The law imposes the obligation of support on both parents. The challenged statute implies that, in the opinion of the Legislature, it is reasonable, in the enforcement of that law, to differentiate between mothers as a class and fathers as a class. The classification is not between men, as such and women, as such; it is between two classes of human beings both of which have a common obligation. The question is whether the legislative command that enforcement of that obligation shall proceed first against one of those classes rather than both is supported by articulable reasons.
It follows from the limited and peculiar nature of the interest asserted by the respondent father  i.e., the desire to resist and defeat his duty to support his child unless and until the state proceeds against the mother  is not of that "fundamental" kind which invokes "an attitude of active and critical analysis, subjecting the classification to strict scrutiny" by the court and requiring the state to prove that "it has a compelling interest" and that the classification is "necessary to further [the state's] purpose" (In re King, supra, 3 Cal.3d at p. 232; In re Antazo, supra, 3 Cal.3d 100, 112; D'Amico v. Board of Medical Examiners,[*] supra, (Cal. App.) 105 Cal. Rptr. 639).
(1) The proper test of constitutionality in this case is, rather, "the conventional standard for reviewing economic and social welfare legislation challenged as a denial of equal protection. The standard upholds the legislature's discretionary choice of differentiated treatment if it bears a *9 rational relationship to a conceivably legitimate state purpose, i.e., if it has a rational basis; it requires the reviewing court to draw a presumption that the facts supply a rational basis and imposes the burden of demonstrating arbitrariness upon the statute's assailant. [Citations.]"
This case is before us without any factual record; therefore the respondent has not discharged his burden of "demonstrating arbitrariness" unless such demonstration appears on the face of the statute itself.
Respondent contends that the claimed invidious discrimination is shown on the face of the statute because it impliedly admits that mothers are equally capable, with fathers, of supporting their children since they are subject to prosecution for nonsupport in the event the father fails in his duty. The conclusion does not follow from its premise. The statute is equally consistent with the view that fathers generally are more able, financially, and better situated, economically, to support their children than are mothers.
(2) In determining the need and propriety of classified legislation, where the same does not appear upon the face of the legislative enactment, the court may resort to its judicial knowledge of the contemporaneous conditions and situation of the people, the existing economic, sociological, and civic policy of the state and all other matters of common knowledge. (Martin v. Superior Court (1924) 194 Cal. 93, 102 [227 P. 762]; County of San Bernardino v. Way (1941) 18 Cal.2d 647, 660 [117 P.2d 354].)
The court will judicially notice that Penal Code section 270 in substantially its present form was enacted in 1923; that although, during the ensuing 50 years the structure of our society has undergone far-reaching changes of many kinds, the family remains the basic social unit; that children still must be fed and nurtured by their parents; that serious and increasing strains have developed in the family unit due to a variety of causes, including the phenomena of working mothers and the proliferation of divorce; that these centrifugal forces have resulted, in many cases, in division of the family and establishment of multiple households; that, despite current efforts to minimize the fact, mothers generally do not compete in the labor market on terms of equality with fathers; that the compensation of mothers in employment is generally lower than for fathers and opportunities for advancement and for business independence are less for mothers; that working mothers frequently are required to spend a substantial part of their earnings for care of their children by others; and that, despite the changes in social life during the past half-century, young children still are largely regarded and treated as the special concern of their *10 mothers, who devote a major share of otherwise employable time to the care of children.
(3) These commonly known facts of present day life are sufficient to support the legislative diversification of fathers and mothers in Penal Code section 270.
In conclusion, it bears emphasis that it is the legal duty of both parents to support their children. In our existing state of society fathers generally are better situated to meet this obligation than mothers. It avails nothing to contend that the facts of life should be different; that both parents should be equally able to discharge their parental duty. Perhaps this will come to pass some day, but it is not true today. The fact that there may be exceptions such as indigent or dissolute fathers, or wealthy and independent mothers, does not vitiate the reasonableness of section 270 in our present social environment (People v. Western Fruit Growers (1943) 22 Cal.2d 494, 506-507 [140 P.2d 13]; Harriman v. City of Beverly Hills (1969) 275 Cal. App.2d 918, 925 [80 Cal. Rptr. 426, 35 A.L.R.3d 1421]).
The judgment is reversed.
Whyte, P.J., concurred.
Zack, J., concurred in the judgment.
NOTES
[*] Pursuant to Constitution, article VI, section 21.
[*] A hearing was granted by the Supreme Court on March 21, 1973.