Rodney K. OLSON, L & V, Inc., VFW Post No. 7564, Silver Dollar, Donald M. Taylor, Larry S. Wolf, Barb M. Wolf, Wm. Parkhouse, and Hi-Ten, Inc., Plaintiffs and Appellants,

v.

CITY OF WEST FARGO, Defendant and Appellee.

Civ. No. 9898.

Supreme Court of North Dakota.

May 12, 1981.

Frederick D. Kraemer and Mark A. Beauchene, Fargo, for plaintiffs and appellants; argued by Frederick D. Kraemer, Fargo.

Brian D. Neugebauer, of Ohnstad, Twichell, Breitling, Arntson & Hagen, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

Rodney K. Olson, L & V, Inc., VFW Post No. 7564, Silver Dollar, Donald M. Taylor, Larry S. Wolf, Barb M. Wolf, William Parkhouse, and Hi-Ten, Inc. (plaintiffs), appealed from a judgment entered on November 17, 1980, by the district court of Cass County. The judgment held that West Fargo Ordinance No. 13–0130.01(d), known as the "Cabaret Ordinance," is constitutional. We affirm.

The parties have stipulated the following facts:

"1. That the Defendant is a municipal corporation which enacts ordinances, resolutions and regulations pursuant to North Dakota Century Code 40–05–01.

"2. That on June 2, 1980, following a second reading of proposed West Fargo Ordinance No. 13–0130.01, that ordinance was enacted by the West Fargo City Commission by a vote of four to one. . . .

"3. That said ordinance was published in the West Fargo Pioneer on June 19, 1980.

"4. That the Plaintiffs are licensed liquor establishments or liquor license holders under West Fargo Ordinance Chapter 13–01 and that all hold valid current licenses to serve alcoholic beverages for consumption on their premises.

"5. The Plaintiffs are subject to all ordinances, resolutions and regulations enacted by the Defendant.

"6. The Plaintiffs face suspension or revocation of their liquor licenses if they do not comply with what they feel is a [sic] unlawful and unconstitutional ordinance.

"7. That the Plaintiffs have standing to bring this action."

There are four particular sections within the cabaret ordinance which the plaintiffs object to as unconstitutional. The four sections state:

"6. No live performances are permitted on a licensed premise which contain any form of dancing. Such prohibition on dancing does not include the incidental movement or choreography of singers or musicians which are made in connection with their singing or playing of a musical instrument. This restriction applies to all licensed premises whether or not they have a cabaret license."

"Live performances" are defined in Section 1(b) as:

"b. Live performances—shall be defined for the purpose of this ordinance to mean any person who for consideration, monetary or otherwise, performs in person on a licensed premise as a singer, musician, dancer, comedian, model."

The other restrictions opposed by the plaintiffs are:

"7. No live performances are permitted on a licensed premise which involve the removal of clothing, garments or any other costume. Such prohibition does not include the removal of headwear or footwear; or the incidental removal of a tie, suitcoat, sportcoat, jacket, sweater or similar outer garments. Incidental removal for purposes of this section shall mean the removal of a garment or article of clothing which is not a part of the act or performance. This restriction applies to all licensed premises whether or not they have a cabaret license.

"8. No entertainment on a licensed premise shall contain:

"(a) The performance of acts, or simulated acts, of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law;

"(b) The actual or simulated touching, caressing or fondling of the breasts, buttocks, anus or genitals;

"(c) The actual or simulated displaying of the pubic hair, anus, vulva or genitals; or the nipples of a female.

"This restriction applies to all licensed premises whether or not they have a cabaret license.

"9. A licensee shall have the duty and responsibility to make available for inspection by a member of the West Fargo Police Department an identification card, such as a driver's license, containing a photograph and the age of all entertainers or performers on the licensed premises. The licensee shall not permit a person to make a live performance on the licensed premise if the licensee is not able to obtain the required identification from the performer."

The plaintiffs raise four issues regarding the cabaret ordinance:

1. Whether or not Sections 6 and 7 are facially overbroad in that they seek to prevent conduct protected under the First Amendment.

2. Whether or not Section 6 of the cabaret ordinance is unconstitutional by reason of vagueness.

3. Whether or not Sections 6 and 9 of the cabaret ordinance are irrational and therefore unconstitutional.

4. Whether or not the City of West Fargo has the legal authority to enact Section 8 of the cabaret ordinance.

Before considering the particular issues raised by the plaintiffs we point out that paragraph 7 of the stipulated facts indicates that the parties have agreed that the plaintiffs have standing to raise these issues.

This court has recognized the power of the State and the cities within it to regulate circumstances involving the public welfare.[1] In *Soderfelt v. City of Drayton*, 79 N.D. 742, 752, 59 N.W.2d 502, 507 (1953), this court stated:

"Statutory enactments and municipal ordinances having for their purpose the protection of the public health, safety, morals and public welfare are founded upon the police power inherent in the state."

*Soderfelt* described this court's position when presented with a challenge to the

---

1. Although the record does not clearly reflect what events or rationale precipitated the enactment of the cabaret ordinance, oral arguments on behalf of both sides of the present issues indicated that topless and go-go dancing in licensed liquor establishments was becoming a concern to residents of West Fargo. While topless dancing requires little in the way of descriptive explanation, go-go dancing is not so easily described. Reference to Webster's New World Dictionary, Second College Edition (1980), provides little assistance regarding the nature of go-go dancing. The definition found therein describes "go-go" as "1. of rock-and-roll dancing or dancers or the discothèques, cafés, etc. where such dancing is featured." At any rate, prior to the enactment of the cabaret ordinance, some concern existed regarding the nature of dance entertainment offered in some West Fargo bars.

constitutionality of these types of statutes and ordinances:

"In passing upon the constitutionality of such statutes or ordinances the courts will not declare them unconstitutional and thus substitute their judgment for that of the legislative body charged with the primary duty and responsibility of determining the question where the question is fairly debatable, that is, unless the statute[s] or ordinances are clearly arbitrary and unreasonable having no substantial relation to the public health, safety, morals or public welfare." 79 N.D. at 752–753, 59 N.W.2d at 507.

I

■ The plaintiffs allege that Sections 6 and 7 of the cabaret ordinance are, because of overbreadth, constitutionally infirm. They argue that these sections, on their face, serve as a deterrent to "legitimate expression by the general public," and that enactment of the ordinance calls for "protection against the 'chilling effect' which is being suffered by the members of the general public."[2] We believe that consideration of an alleged infringement upon expression protected by the First Amendment requires that the scope of such an infringement must be clearly delineated. In this regard, the overbreadth doctrine is a sword which may cut two ways: to narrow the allegation of infringement and possibly to narrow the infringement itself. It is clear from a reading of Sections 6 and 7 that, if they reflect an infringement on protected expression, that infringement is not directed toward the general public but rather to specific types of entertainers who perform for consideration in an establishment in West Fargo which is licensed to sell liquor by the drink. Thus the plaintiffs' broad assertion of infringement on the general public's right of free speech has been narrowed and, as will be developed below, more

paring of this issue is necessary before the constitutional question may be answered.

Before considering an assertion of overbreadth an initial determination must be made as to whether or not the rights asserted are properly First Amendment rights and are therefore entitled to consideration under the overbreadth doctrine. It is clear that in this appeal we are not examining expression in the form of pure speech, but rather expression in the form of conduct. The plaintiffs have pointed to State and Federal court cases which have expressly held that dancing is a form of expression which is protected by the First Amendment. We do not dispute that there are many forms of dance, classical and contemporary, which are designed to convey messages and which draw on a huge array of emotions and ideas in such conveyances. However, the First Amendment does not serve as a blanket which affords automatic protection to the limitless variety of bodily movements which may be labeled "dance" and which are claimed by the "dancer" to be an expression of ideas. Indeed, the United States Supreme Court, in discussing the speech-conduct continuum, stated:

"But as a mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulation significantly increases." *California v. LaRue*, 409 U.S. 109, 117, 93 S.Ct. 390, 396, 34 L.Ed.2d 342, 351 (1972).

We have thus far narrowed in two ways the plaintiffs' initial allegation that the cabaret ordinance infringes on the First Amendment liberties held by the general public. First, rather than on the general public, the ordinance focuses on entertainers who, for consideration, perform live in licensed liquor establishments. Second, the ordinance is directed toward conduct, a form of expression which may be afforded

2. The primary emphasis of the plaintiffs' "overbreadth" argument regarding Sections 6 and 7 of the cabaret ordinance is placed upon Section 6. Little mention was made in the plaintiffs' brief or in oral argument regarding the alleged overbreadth of Section 7. Presumably the

plaintiffs see the conduct prohibited by Section 7 as an extension of the general prohibition on dancing in Section 6. Accordingly, our discussion of the overbreadth issue will focus on Section 6.

relatively less First Amendment protection than expression which is spoken or written. However, the precise nature of the issue presented on this appeal has not yet surfaced and awaits one more step in this narrowing process. That process leads us back to *California v. LaRue, supra,* where the United States Supreme Court considered the constitutionality of California regulations designed to eliminate certain entertainment in bars and night clubs. The nature of the activities sought to be prohibited by the regulations included a wide variety of sexually oriented "live entertainment." In California, the Department of Alcoholic Beverage Control is vested by the State Constitution with primary authority for the licensing of the sale of alcoholic beverages. That agency holds the corresponding power to revoke any such license if a determination has been made that its continuation would operate to the detriment of public welfare or morals. The agency promulgated the regulations at issue in that case and a challenge was instituted by several license-holders and dancers who alleged that the regulations unconstitutionally abridged freedom of expression guaranteed to them by the First and Fourteenth Amendments. Thus in *LaRue,* as in the present case, the prohibitions at issue were directed toward conduct in licensed liquor establishments. In framing the issue, the Court sought to clarify the context in which the appeal was brought, and stated:

> "The state regulations here challenged come to us, not in the context of censoring a dramatic performance in the theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink." 409 U.S. at 114, 93 S.Ct. at 395, 34 L.Ed.2d at 349.

We believe the appeal before us may be framed in precisely the same context as the

appeal in *LaRue.* The significance of this view is that it introduces into our consideration of the issue before us the Twenty-first Amendment to the Constitution.[3] Before considering this new element we point out that the Supreme Court has recognized that the Twenty-first Amendment does not abolish the guarantees of the Bill of Rights and that the State's general police power is subject to them. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *rehearing denied* 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977). However, in *McCarney v. Meier,* 286 N.W.2d 780 (N.D. 1979), we acknowledged that a court must give effect and meaning to every provision of the Constitution and, if possible, reconcile apparently inconsistent provisions. Further, this court has recognized that all constitutional provisions have equal dignity. *State ex rel. Sanstead v. Freed,* 251 N.W.2d 898 (N.D.1977). See also *Ullman v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), *rehearing denied* 351 U.S. 928, 76 S.Ct. 777, 100 L.Ed. 1457 (1956). With these principles in mind, we turn to consideration of the role the Twenty-first Amendment plays in our determination of the issues before us.

In *California v. LaRue, supra,* the Supreme Court acknowledged that States possess general police power which requires no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power. The Court then recognized that the scope of the States' police power may be even broader under some circumstances than others, when it stated:

> " . . . the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." 409 U.S. at 114, 93 S.Ct. at 395, 34 L.Ed.2d at 349–350.

This provision has been interpreted by the Supreme Court as standing for a constitutional policy that the regulation of the liquor traffic is a local, rather than national, matter. *Carter v. Virginia,* 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605 (1944).

3. That amendment, as part of its repeal of Eighteenth Amendment prohibition, states in Section 2:

> "The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

In their effort to limit this broadened power, the license-holders and dancers in *LaRue* offered a specific example to show that the same results sought by the Department of Alcoholic Beverage Control could be achieved through employment of a less-restrictive method of control. While the plaintiffs in this case have not suggested alternatives to the prohibitions within the cabaret ordinance, the response given by the Court in *LaRue* to the suggested alternative nevertheless is applicable here:

"But wide latitude as to choice of means to accomplish a permissible end must be accorded to the State agency that is itself the repository of the State's power under the Twenty-first Amendment." 409 U.S. at 116, 93 S.Ct. at 396, 34 L.Ed.2d at 350.

In North Dakota cities are a repository of the State power under the Twenty-first Amendment through Section 40–05–01(29), N.D.C.C., which gives the city governing body the power: "To regulate the use and to regulate and license the sale of alcoholic beverages subject to the provisions contained in title 5." Title 5 of the North Dakota Century Code is entitled "Alcoholic Beverages" and within Chapter 5–02, "Retail Licensing," is Section 5–02–09, N.D.C.C., which states:

"*Local regulations.*—The local governing body by ordinance or resolution may regulate or restrict the operation of licenses including among other things determining the number of licenses to be granted, establishing health and safety standards for the licensed premises, setting hours and prohibition of dancing or various forms of entertainment on the premises."

The case law relied upon by the parties to this appeal is distinguishable from the present issue in one of two ways. Regarding the cases cited by the plaintiffs, where the prohibition under attack was found to be overbroad, the overbreadth rested in the fact that the prohibition reached far beyond the barroom doors and the State's authority under the Twenty-first Amendment. For example, topless dancing in "any public place" [*Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975)]; nude or topless dancing under a statute defining and prohibiting lewdness [*Attwood v. Purcell*, 402 F.Supp. 231 (D.Ariz.1974)]; ordinance prohibiting appearing in public "topless" (women), bottomless, or engaged in "obscene live conduct" [*Birkenshaw v. Haley*, 409 F.Supp. 13 (E.D.Mich.1974)]; ordinance prohibiting all public entertainment involving the exposure of certain parts of the anatomy [*San Juan Liquors v. Consol. City of Jacksonville*, 480 F.Supp. 151 (M.D. Fla.1979)]. In the present case the prohibition under attack is confined strictly to the four walls of the barroom and focuses only on persons dancing for consideration. On the other hand, West Fargo points to five cases which it claims demonstrate that the State and Federal courts "have consistently upheld ordinances similar to the West Fargo cabaret ordinance." However, an examination of those cases quickly reveals that the prohibitions under attack, although limited in application to liquor establishments, barred topless or nude dancing rather than all forms of entertainment in the nature of dance. See *Paladino v. City of Omaha*, 471 F.2d 812 (8th Cir. 1972); *Three K. C. v. Richter*, 279 N.W.2d 268 (Iowa 1979); *City of Seattle v. Hinkley*, 83 Wash.2d 205, 517 P.2d 592 (1973); *Longbridge Investments Co. v. Moore*, 23 Ariz.App. 353, 533 P.2d 564 (1975); and *Midtown Palace, Inc. v. Omaha*, 193 Neb. 785, 229 N.W.2d 56 (1975).[4]

4. The Colorado Supreme Court recently considered a similar issue in *Marco Lounge, Inc. v. City of Federal Heights*, 625 P.2d 982 (1981). In that case the City had adopted a zoning ordinance that established zoning classifications. One such classification was the E1 Entertainment District. Permitted uses in that district included any place providing live, nude entertainment. The ordinance also provided that the E1 zoning districts could be created only through the enactment of an ordinance amendment by initiative. The court noted that without the required initiative no live, nude entertainment would be permitted in the city and that even with such an initiative the ordinance would permit the continuation of the censorship by a majority vote. The court went on to point out that this situation is precisely the evil which the First Amendment was adopt-

Recently the United States Supreme Court dismissed for want of a substantial Federal question, the appeal in *State v. Baysinger, sub nom. Clark v. Indiana,* 446 U.S. 931, 100 S.Ct. 2146, 64 L.Ed.2d 784 (1980). The significance of the *Baysinger* dismissal is that it seemingly sustained the expansion of the State's police power regarding dancing to a dimension never before known. And this resulted without calling upon the Twenty-first Amendment for support. The dismissal concerned the case of *State v. Baysinger,* 397 N.E.2d 580 (Ind. 1979). That case involved a challenge by certain bar owners and topless dancers of an Indiana statute which prohibits a person from "knowingly or intentionally, in a public place . . . appear[ing] in a state of nudity." The challengers alleged that because of the potential for restriction of material or performances involving the communication of ideas, or speech, it is constitutionally required that a State tolerate or allow nudity in some context as part of some larger form of expression. The Indiana Supreme Court rejected this argument and the United States Supreme Court's disposition of the subsequent appeal signifies, pursuant to *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1973), that the Supreme Court sustained on the merits, with precedential force as to all courts except the Supreme Court, the Indiana court's decision.[5] The essence of that decision was that a statute which is facially so broad that it prohibits topless dancing by females occurring in any public place—provided the dancing does not occur as part of written material or of a motion picture or other pictorial representation, or of a live musical or theatrical performance or production—does not embody an unconstitutional encroachment on speech and expression.

Notwithstanding the fact that *Baysinger* was concerned with nude dancing, as opposed to dancing in general, we see as significant the result of that case. The central issue in *Baysinger* revolved around the question of how far the State's police power may go in regulating conduct, even when that conduct embodies speech as an ingredient, in the name of public health, welfare, and morals. The obvious conclusion is that such authority extends far beyond the four walls of a liquor establishment. This result, coupled with the conclusion in *LaRue, supra,* that the Twenty-first Amendment confers upon the States something in addition to their normal police power over health, welfare, and morals, leads us to the determination that the cabaret ordinance, confined as it is to licensed liquor establishments,[6] is not an unconstitutional infringement on free speech or expression.

---

ed to prevent and on that basis ruled that the zoning plan was constitutionally unsound.

5. As characterized by the court in *Gabriele v. Town of Old Orchard Beach,* Me., 420 A.2d 252, 256 (1980), the reasoning of the Indiana court was: "(1) Indiana 'public indecency' statutes, like the one under attack, in relation to their definitions of 'nudity,' had early been limited by Indiana case law so that they would apply only to 'public displays' of 'nudity' occurring other than as a part of written material, or a motion picture or other pictorial representation, or of a live musical or theatrical performance or production; (2) as thus limited, even if the Indiana statute under attack might apply to activity embodying speech as an ingredient, the involvement of speech as being a communication of content is so minimal that it becomes irrelevant to the constitutionality of the statute whether obscenity is also involved in the prohibited activity; (3) the activity of a female's dancing topless, as such and without more, occurring in a public place is an activity involving so minimal an element of content-conveying speech that it becomes irrelevant to the constitutionality of the prohibition of that activity whether obscenity is involved as an additional ingredient; (4) it has been a traditional, and legitimate, exercise of state police power to protect against 'public indecency' by prohibiting displays of nudity in public places; (5) hence, notwithstanding that on its face the Indiana statute is broad enough to apply to nude dancing, as such, occurring in public places other than those covered by the State's liquor licensing program, the statute is not unconstitutional as an undue abridgment of protected speech but is, rather, a valid exercise of the traditional police power of the State to protect against the 'public indecency' of a display of nudity in any public place."

6. We stress that we do not consider the nature of the prohibited dancing as pivotal to a determination of this issue. Rather, it is the scope of the prohibition in question that is determinative. In that regard, we see as pertinent this

## II

The plaintiffs next contend that Section 6 of the cabaret ordinance is unconstitutional by reason of vagueness. Specifically, they assert that it will be impossible for an entertainer to know when his or her movements will cease to be incidental and begin to be "dancing" as it is normally known. The plaintiffs urge that the types of movements sought to be prohibited by the cabaret ordinance must be identified with strict precision. Their rationale for this argument is that when prohibited conduct is of the nature of that which may be accorded protection through the First Amendment, such precision is required in order to eliminate the "chilling effect" of prohibition. As authority for this theory, the plaintiffs point to *Smith v. Goguen*, 415 U.S. 566, 572–573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605, 611–612 (1974), in which is found this statement:

"The doctrine [vagueness] incorporates notions of fair notice and warning.... Where a statute's literal scope, unaided by a narrowing State court interpretation, is capable of reaching expressions sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts."

We do not dispute this proposition. However, we have already concluded that it is within the power of West Fargo, under the combined authority of its police power and the Twenty-first Amendment, to prohibit dancing by paid performers through the cabaret ordinance. Therefore, we see no need for a requirement that a greater degree of specificity exist in the cabaret ordinance regarding what conduct it prohibits.

Because a violation of the ordinance subjects the plaintiffs to possible criminal prosecution, we look at the requirement of the Due Process Clauses of the State and Federal Constitutions regarding the definiteness of this prohibition. That requirement is that definiteness exist to the degree that the language, when measured by common understanding and practices, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law. In determining if adequate warning is given, the court should view the prohibition from the standpoint of the reasonable man who might be subject to its terms. *State v. Woodworth*, 234 N.W.2d 243 (N.D.1975). The mere use of general language does not support a vagueness challenge:

"The test of definitiveness of a statute is met if the meaning of the statute is fairly ascertainable by reference to similar statutes or to the dictionary, or if the questioned words have a common and generally accepted meaning." *Woodworth, supra*, 234 N.W.2d at 246.

We cannot conclude here that the area between "incidental movements" and "dancing" is so vague as to place a reasonable person in a position of utter uncertainty as to whether he or she is on the threshold of violating a prohibition on dancing.

In *Intern. Soc. for Krishna Consciousness v. Eaves*, 601 F.2d 809 (5th Cir. 1979), the Court was asked to decide the constitutionality of a municipal ordinance designed to regulate the distribution of literature and solicitation of funds at airports owned by the City of Atlanta, Georgia. Although that case involved several complex issues, we believe that a portion of the Court's opinion regarding a vagueness challenge is applicable to the issue now before us. In discussing that challenge the Fifth Circuit Court stated:

" 'Condemned to the use of words,' however, 'we can never expect mathematical certainty from our language.' *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972).

statement made by the court in *California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342, 352 (1972):

"While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink."

See also *American Communications Association v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950). ("There is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be a nice question. The [objective], however, is not ... [the] wholly consistent academic definition of abstract terms.') We must also bear in mind that '[t]he applicable standard ... is ... the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important.' *Id.* Because this ordinance deals only with the airport, and only with those licensed to proselytize there, it will be applied repeatedly by a relatively small number of enforcement officials to a relatively small number of people. Over time—indeed, probably fairly quickly—certain patterns of enforcement and tacit understandings will develop. This 'less formalized custom and usage,' *Parker v. Levy,* 417 U.S. 733, 754, 94 S.Ct. 2547 [2560], 41 L.Ed.2d 439 (1974), will clarify much of the inevitable imprecision. Supreme Court decisions strongly suggest that the authorities will not be permitted to prosecute conduct permitted by those understandings, see e. g., *id.; Cox v. Louisiana (II),* 379 U.S. 559, 568–73, 85 S.Ct. 476 [482–485], 13 L.Ed.2d 487 (1965); *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), even if it is apparently proscribed by the ordinance itself. 'Deeply embedded traditional ways of carrying out state policy ... are often tougher and truer law than the dead words of the written text.' *Nashville, C. & St. L. Ry. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940). Under these circumstances, we can permit slightly more imprecision than we would approve in a measure about to be enforced against the public at large in multifarious contexts." 601 F.2d at 830–831.

We agree with the reasoning employed by the Fifth Circuit Court in *Eaves, supra.* The West Fargo cabaret ordinance deals with licensed liquor establishments only and

will be applied by a relatively small number of enforcement officials to a relatively small number of people. Further, the term "dancing," although applicable to a wide variety of bodily movements, is not so imprecise as to prevent a reasonable person from knowing what conduct is prohibited. There is little doubt that patterns of enforcement and tacit understandings will develop to the point where all involved will not question the reach of the ordinance. For these reasons we do not accept the assertion by the plaintiffs that Section 6 of the cabaret ordinance is unconstitutionally vague.

### III

The third challenge to the cabaret ordinance brought by the plaintiffs is directed at Sections 6 and 9 of the ordinance. The plaintiffs assert that these sections are irrational on their face and therefore must fall.

■ Regarding the specific alleged irrationality of Section 6, the plaintiffs point out that the prohibition on dancing excludes "the incidental movement or choreography of singers or musicians which are made in connection with their singing or playing of a musical instrument." From this the plaintiffs, while concentrating on the terms "singers" and "musicians," conclude that it is entirely irrational that these types of entertainers "should be given any greater opportunity to exercise their First Amendment rights than other entertainers." The plaintiffs assert that by obvious omission a comedian would enjoy lesser rights than a musician or singer and that there is no rational basis for this inequality. We believe this argument is without merit. We see no irrationality in this section's emphasis on the incidental movements of entertainers who sing or play a musical instrument. Common experience demonstrates that it is these types of entertainers who are most inclined to and most often do rely upon incidental movements and choreographed elements to enhance the primary ingredient of their performance.

The plaintiffs also assert that Section 9, requiring licensees to have available photographic identification of all entertainers performing in the establishment, is irrational. The obvious purpose of such a requirement, as pointed out by West Fargo in its brief, is to avoid the possibility of minors performing in liquor establishments. The plaintiffs note that the police already have the power to check the identification of anyone inside a liquor establishment. However, we see as entirely within the realm of its police power, and particularly when the Twenty-first Amendment is applied, the authority of West Fargo to place the burden upon the licensee to make sure that the people performing in a licensed establishment are not minors. Indeed, requirements broader than the one here at issue have been found constitutional even where the Twenty-first Amendment was not a part of the consideration.[7]

The plaintiffs illustrate what they perceive as the irrationality of Section 9 by pointing out that a senior citizen who is a member of a musical group performing in a licensed establishment must supply the licensee with photographic identification and if that senior citizen should forget to bring such identification he would be precluded from performing. While this might be unfortunate for the particular senior citizen, we do not believe that such an eventuality serves to support a determination of irrationality regarding Section 9. We believe that our conclusion is particularly warranted when the purpose of Section 9 is considered in its practical application. That section is designed to keep minors, not senior citizens, from performing in liquor establishments.

## IV

The last issue raised by the plaintiffs is that the City of West Fargo does not have authority to enact Section 8 of the cabaret ordinance. That section prohibits licensees from allowing sexually explicit or obscene entertainment on the licensed premises. The plaintiffs rest their contention in the argument that Chapter 12.1–27.1 of the North Dakota Century Code entitled "Obscenity Control" specifically pre-empts local regulation of performances in the nature of those prohibited by Section 9 of the cabaret ordinance. See § 12.1–27.1–12.

To support their claim, the plaintiffs expressly adopt this court's method of statutory construction as applied in *City of Grafton v. Four G's, Inc.*, 252 N.W.2d 879 (N.D. 1977). However, it appears that they abandon that method when they consider the statutory development which occurred subsequent to the *Four G's* case. In that case this court determined that a city ordinance which prohibited certain conduct (which in essence is the same type of conduct prohibited by Section 8 here at issue) in licensed liquor establishments was invalid in that regulation of such conduct had been pre-empted by this State's obscenity-control statutes. Clearly, barring any subsequent pertinent legislative action, the holding in *Four G's* would invalidate Section 8 of West Fargo's cabaret ordinance.

In *Four G's, supra,* this court considered the pertinent statutes and concluded, through application of Section 1–02–07, N.D.C.C.,[8] that the special statute found at Section 5–02–09, N.D.C.C.,[9] which delegates

7. See *Harriman v. Beverly*, 275 Cal.App.2d 918, 80 Cal.Rptr. 426, 35 A.L.R.3d 1421 (1969), where a regulation requiring telephone-answering services to furnish the police department with fingerprints, photographs, and penal histories of all employees was upheld.

8. Section 1–02–07, N.D.C.C., states:
    "Particular controls general.—Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict be-

tween the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail."

9. Section 5–02–09, N.D.C.C., states:
    "*Local regulations.*—The local governing body by ordinance or resolution may regulate or restrict the operation of licensees including among other things determining the number of licenses to be granted, establishing

to municipalities the power to regulate or restrict the operation of liquor licensees, would prevail over Section 12.1–27.1–12,[10] which is a general pre-emption statute, if only those two statutes were involved. However, we also pointed out that Section 12.1–27.1–12 must be read in conjunction with Section 12.1–27.1–01(3).[11]

In order to give full force to Section 12.1–27.1–01(3), the court examined that statute's legislative history and ultimately determined that the Legislature intended to prohibit municipalities from attempting to control obscenity, not only generally but also specifically in establishments selling alcoholic beverages at retail. It was upon that determination that the ordinance at issue in *Four G's* was declared invalid.

Following the decision in *Four G's*, at the very next legislative session in 1979, the Legislature undertook to return to the municipalities the power to control obscene entertainment in liquor establishments. Senate Bill No. 2100 was introduced and referred to the Political Subdivisions Committees of the respective chambers for consideration. The minutes of the meetings of those committees make direct reference to the *Four G's* decision and clearly reflect that the bill under consideration at those meetings[12] was intended to eliminate the impact of *Four G's* by amending and reenacting Section 12.1–27.1–12. That section, as amended by House Bill 2100 (Chapter 184, Session Laws of North Dakota, 1979), now states:

"*State preemption of local laws regulating obscenity.* This chapter shall be applicable and uniform throughout the state, and no political subdivision shall enact new, or enforce existing, ordinances or resolutions regulating or prohibiting the dissemination of obscene materials, or controlling obscene performances, *except ordinances authorized by section 5–02–09.*" [Emphasis supplied.]

Thus it is clear, not only from the legislative history of the 1979 amendment to Section 12.1–27.1–12 but also from the express language of that amendment, that the Legislature believed that the cities are appropriate repositories for authority to control obscene conduct in liquor establishments. We therefore determine that West Fargo had the authority to enact Section 8 of the cabaret ordinance.

In light of our discussion above, we conclude: (1) Sections 6 and 7 of the West Fargo cabaret ordinance are not unconstitutionally overbroad; (2) Section 6 of the West Fargo cabaret ordinance is not unconstitutionally vague; (3) Sections 6 and 9 of the West Fargo cabaret ordinance are not without a rational basis; and (4) the City of West Fargo has the authority to enact Section 8 of that City's cabaret ordinance.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

health and safety standards for licensed premises, setting of hours and prohibition of dancing or various forms of entertainment on the premises."

10. At the time *Four G's* was decided, Section 12.1–27.1–12, N.D.C.C., read:

"*State pre-emption of local laws regulating obscenity.*—This chapter shall be applicable and uniform throughout the state, and no political subdivision shall enact new, or enforce existing, ordinances or resolutions regulating or prohibiting the dissemination of obscene materials, or controlling obscene performances."

11. Section 12.1–27.1–01(3), N.D.C.C., states:

"3. A person is guilty of a class A misdemeanor if he, as owner or manager of an establishment licensed under section 5–02–01, permits an obscene performance in his establishment. A person is guilty of a class A misdemeanor if he participates, whether or not for compensation, in an obscene performance in an establishment licensed under section 5–02–01."

12. See January 5, 1979, minutes of the Senate Political Subdivisions Committee and January 19, 1979, minutes of the House Political Subdivisions Committee, 46th Legislative Assembly.